IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE A. POPE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV-02 -B-1152-NE |
| | } | |
| ADTRAN, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**[1]

Currently before the court are the Motion for Summary Judgment and the Motion to Strike Portions of Plaintiff's Memorandum Brief filed by defendant Adtran, Inc. ("Adtran" or "Defendant"). In her Complaint, plaintiff Jacqueline A. Pope ("Pope"or "Plaintiff") alleges that Adtran (1) discriminated against her on the basis of her race in termination, discipline and other terms and conditions of her employment, violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and 42 U.S.C. § 1981; (2) retaliated against her for complaining of race discrimination, violating Title VII and 42 U.S.C. § 1981; (3) interfered with her rights under the Family Medical Leave Act ("FMLA"), violating 29 U.S.C. § 2615(a)(1); and (4) retaliated against her for exercising FMLA rights, violating 29 U.S.C. § 2615(a)(2). Upon

---

[1]At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff. Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n. 46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Defendant's Motion for Summary Judgment is due to be granted and Defendant's Motion to Strike is due to be granted in part and denied in part.

## I. ADTRAN'S MOTION TO STRIKE

Defendant filed a Motion to Strike Portions of Plaintiff's Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment, arguing that the challenged portions of Plaintiff's Memorandum Brief rely on evidence the court should not consider on a motion for summary judgment. The court agrees with defendant in all but two instances.

Rule 56(e) of the Federal Rules of Civil Procedure provides: "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." These requirements are mandatory, and affidavits that do not comply with them are inadmissible when considering a motion for summary judgment. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *McCollough v. Atlanta Beverage Co.*, 929 F. Supp. 1489, 1507 (N.D. Ga. 1996).

A plaintiff may not avoid summary judgment by means of self-serving, conclusory statements that lack specific factual support in the record. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (conclusory allegations in nonmovant's affidavit, without specific supporting facts, have no probative value); *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir. 1976) (same); *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (same). Stated simply, speculation by a plaintiff or witness is not a sufficient defense to a summary judgment motion. *Broadway*, 530 F.2d at 660. Similarly, hearsay cannot be used to defeat a summary judgment motion. *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir.

1996); *McMillian v. Johnson*, 88 F.3d 1573, 1583-84 (11th Cir. 1996) *aff'd*, 520 U.S. 781 (1997); *McCollough*, 929 F. Supp. at 1507.

When considering a motion for summary judgment, the court may only consider evidence admissible at trial. *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 486 n.2 (5th Cir. 1979); *Joiner v. GE*, 864 F. Supp. 1310, 1317 (N.D. Ga. 1994)("[e]vidence offered in connection with a motion for summary judgment, whether contained in an affidavit or otherwise, must be admissible"); *Soles v. Board of Comm'rs of Johnson County, Ga.*, 746 F. Supp. 106, 110 (S.D. Ga. 1990). The same standards apply in determining the admissibility of evidence under Rule 56 as at trial. *Munoz v. Intl. Alliance of Theatrical Stage Employees*, 563 F.2d 205, 207 n.1 (5th Cir. 1977); *Soles*, 746 F. Supp. at 110. Thus, in ruling upon summary judgment motions, the court should refuse to consider inadmissible hearsay. *Soles*, 746 F. Supp. at 110. Affidavits proffered in opposition to motions for summary judgment must be based upon personal knowledge; therefore, affidavits based upon information and belief are insufficient as a matter of law. *Gore v. GTE South, Inc.*, 917 F. Supp. 1564, 1570 (M.D. Ala. 1996); *Reeves v. Thigpen*, 879 F. Supp. 1153, 1164 (M.D. Ala. 1995).

A plaintiff cannot overcome a summary judgment motion with affidavit statements that contradict her prior deposition testimony. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657-59 (11th Cir. 1984)(when a party has given clear answers to unambiguous questions at a deposition, the party cannot then create an issue with an affidavit contradicting previously given clear testimony).

A. **The court finds defendant's motion to strike is due to be granted as to the following statements in plaintiff's opposition brief and such statements have not been considered by the court in deciding defendant's Motion for Summary Judgment.**

   1. Katrina Steward worked on the quality team and testified that Mrs. Pope would conduct the exact same project that Julie Hopper would perform and Mrs. Pope would get reprimanded for it but Ms. Hopper would not.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 5 (citing Doc. 30, Ex. 9 at 14-16.).)

The court finds this assertion lacks evidentiary support because Steward admitted that she had no personal knowledge. Specifically, Steward conceded during her deposition that her entire body of knowledge regarding this matter was based solely on what plaintiff had told her. The court therefore strikes the above quoted portion of Plaintiff's opposition brief because Steward's testimony was not based on her personal knowledge.

   2. Ms. Abell informed Mrs. Pope that she needed to submit her paperwork because Charles O'Donnell and Sherry James were trying to 'can' Mrs. Pope.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 7 (citing Doc. 30, Ex. 4 at 182-83.).)[2]

Pope's testimony about what Abell told her is offered for the truth of the matter and is clearly inadmissible hearsay falling within no exception to the rule.[3] Therefore, the court strikes the above quoted portion of Pope's opposition brief because it is unsupported in the record.

   3. Black employees were treated differently than white employees as to when they were required to sign in and out.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 8 (citing Doc. 30, Ex. 9 at 44-45; Doc. 30, Ex. 8 at 31.).)

---

[2] The references on pages 16 and 18 of Pope's brief to the "canned" statement are due to be stricken for identical reasons.

[3] Abell is Adtran's benefits administrator, a non-supervisory position. Pope cannot characterize her statement as an admission of a party-opponent under Rule 801 of the Federal Rules of Evidence.

The foregoing language is unsupported by the record cites provided by Pope. Steward testified that Pope told her that Pope believed Adtran treated black and white employees differently in terms of signing in and out of the log book; however, Pope offers Steward's testimony of what Pope told her as proof that black and white employees were treated differently. (Doc. 30, Ex. 9 at 44.) In addition, Pope cites to portions of the depositions of Hopper and Steward in which each testified that she, and the other employees, were required to sign in and out before and after normal working hours, as well as weekends. (Doc. 30, Ex. 8 at 31-32; Doc. 30, Ex. 9 at 44-45.) This testimony, however, is insufficient to raise an inference that white employees were not treated similarly. The court strikes the above quoted portion of Pope's opposition brief because the cited evidence does not support the proposition.

> 4. Mrs. Pope . . . was required to sign in and out every day and was questioned numerous times about her time.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 8 (citing Doc. 30, Ex. 4 at 219-20.).)

Pope testified to only one occasion on which she was questioned about the log book. (Doc 30, Ex. 4 at 220-21.) Nothing in the record supports plaintiff's statement that she was questioned "numerous times." Therefore, the court strikes the above quoted portion of Pope's opposition brief because the record does not support it.

> 5. Ms. McAllister testified that Ms. James and Ms. Hopper would have meetings in Ms. James' office about auditing and documents, but would not invite Mrs. Pope to attend the meetings.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 10 (citing Doc. 30, Ex. 6 at 22-23.).)

McAllister testified only as to what Pope had told her about meetings between James and Hopper. (Doc. 31, Ex. 3 at 46-47.) McAllister did not witness James and Hopper having work-related meetings and she had no personal knowledge of such meetings. *Id.* The court strikes the

above quoted portion of Pope's opposition brief because the underlying testimony is not based on personal knowledge and is inadmissible hearsay.

> 6. Mrs. Pope testified that when she returned from leave the computer, color printer, and telephone which Ms. Hopper was allowed to use were new and more modern than the equipment she had to use . . . .

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 13 (citing Doc. 30, Ex. 4 at 281-82, 287-88.).)

Pope testified that she did not know whether Hopper received new equipment, yet her brief asserts otherwise. (Doc. 30, Ex. 4 at 287-88.) Pope's assertion that Hopper's equipment was new lacks foundation and is inconsistent with Pope's deposition testimony. Therefore the court strikes the above quoted portion of Pope's opposition brief, as it is an assertion not supported by the evidence cited.

> 7. Ms. McAllister further testified that Ms. James would not allow Mrs. Pope to work overtime.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 14 (citing Doc. 30, Ex. 6 at 24, 28.).)

McAllister testified that she had absolutely no knowledge of whether Pope ever went to James and requested overtime work. (Doc. 31, Ex. 2 at 28-29.) Therefore, the court strikes the above quoted portion of Pope's opposition brief as it is not supported by the evidence cited.

**B.  The court finds defendant's Motion to Strike is due to be denied as to the following statements in plaintiff's opposition brief.**

> 1. Ms. McAllister testified that based upon Ms. James' tone of voice, mannerisms, and expressions that Ms. James treated Mrs. Pope differently because of her race.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 9 (citing Doc. 30, Ex. 6 at 26-28.).)

The court notes that McAllister's testimony is conclusory[4] and not probative as to the issue of whether James treated Pope differently or whether she did so based on Pope's race. However, the court denies Defendant's Motion to Strike as to the above excerpt of Pope's opposition brief.

> 2. Ms. James informing Mrs. Pope that she could not be absent and that she would be on probation if she was absent was an infringement of Mrs. Pope's rights under the FMLA should she have decided to exercise her twelve weeks' leave for the year 2001.

(Pl. Mem. Br. in Opp'n to Mot. for Summ. J. at 19.)

The court views the above-quoted excerpt from Pope's opposition brief as argument and denies Defendant's Motion to Strike it from the record.

For the reasons set forth above, defendant's Motion to Strike is due to be granted in part and denied in part.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.  **Factual Summary**

1.  **Adtran's Quality Auditing Department**

Adtran is engaged in the business of designing and manufacturing equipment for the telecommunications industry. (Doc. 24, Ex. 20 ¶ 3.) Adtran's headquarters are located in Huntsville, Alabama, where it employed Pope, an African-American female, as an Associate Quality Auditor ("Auditor") in the Auditing Department. (Doc. 24, Ex. 20 ¶¶ 3-4; Doc. 24, Ex. 15 at 21.) The Auditing Department is charged with performing internal process audits on Adtran's various work instructions and processes. (Doc. 24, Ex. 17 at 21; Ex. 15 at 120; Ex. 16

---

[4] When considering a motion for summary judgment and the response thereto, the court may properly strike material that is conclusory. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998)(statements in summary judgment affidavits submitted in Title VII action that treatment facility was racially hostile were properly struck as conclusory).

at 35.) In August 1998, Adtran hired Sherry James ("James") as Lead Quality Auditor. (Doc. 24, Ex. 21 ¶ 3; Ex. 20 ¶ 5; Ex. 17 at 11, 20.) James was responsible for Adtran's entire quality management system, and one of her responsibilities was supervision of Auditors; until September of 2000, Pope was the only auditor. (Doc. 24, Ex. 17 at 11-12, 24-25, 29-30, 51; Ex. 19 at 21-24; Ex. 15 at 201-04.) Also, James was responsible for establishing quarterly auditing schedules and conducting bi-annual performance evaluations on the Auditors. (Doc. 24, Ex. 17 at 11-12, 24-25; Doc. 24, Ex. 20 ¶ 9.)

### 2. James's Discovery of Pope's Inadequate Performance

As auditor, Pope's job responsibilities included performing internal process audits on Adtran's various work instructions and processes. (Doc. 24, Ex. 17 at 21; Ex.15 at 120; Ex.16 at 35.) Pope was absent for two weeks in February of 2000, causing James to perform many of Pope's assigned audits. (Doc. 24, Ex. 20 ¶ 7; Ex. 21 ¶ 6.) During this two-week period, James discovered that Pope's auditing was inefficient. (Doc. 24, Ex. 20 ¶ 7; Ex. 21 ¶ 6.) In March 2000, James implemented a plan to improve Pope's performance that included weekly status meetings with Pope. (Doc. 24, Ex. 21 ¶ 7; Ex. 15 at 148-50; Ex. 5.) In July 2000, James conducted Pope's bi-annual performance evaluation, at which time she informed Pope that certain areas of her auditing performance had not improved. (Doc. 24, Ex. 21 ¶ 9; Ex. 15 at 164-65, 167-68; Ex. 7; Ex. 18 ¶ 22.)

### 3. Pope's Complaint to Human Resources about James and Pope's Subsequent FMLA Leave

Pope disagreed with James's assessment of her performance in her July performance evaluation, and she complained to Human Resources Representative, Larry Black, that James's

performance evaluation was unfair.[5] (Doc. 24, Ex. 15 at 167-69; Doc. 20, ¶ 8.) Black told Pope he would look into the matter; however, he could not question James because she was on personal leave of absence, of which both Black and Pope were aware. (Doc. 24, Ex. 15 at 169-70.) James's personal leave lasted from June to October 2000. (Doc. 24, Ex. 17 at 28.) Black attempted to reach James during her period of leave, but was unsuccessful. (Doc. 24, Ex. 16 at 43-44, 47.) Before James returned from her personal leave, Pope took medical leave under the Family Medical Leave Act ("FMLA") and was absent from work from July 31 through October 31, 2000. (Doc. 24, Ex. 15 at 229.) Pope returned to her auditor position at the end of her leave.[6] (Doc. 24, Ex. 16 at 62.)

### 4. Adtran's Creation of a New Auditor Position

When James was hired, Pope was the only Auditor and the only person James supervised. (Doc. 24, Ex. 15 at 225; Ex. 17 at 26-27; Ex. 21 ¶ 4.) In September of 2000, during James's personal leave and Pope's FMLA leave, Adtran created another Auditor position at the request of Charles O'Donnell, Vice President of Quality, and O'Donnell transferred Julie Hopper, (white female), to that position. (Doc. 24, Ex. 17 at 29-30, 51; Ex. 19 at 21-24; Ex. 15 at 201-04.) Prior to the creation of this second Auditor position, Pope had requested assistance in completing

---

[5] Pope alleges in her Complaint that she complained to Black that James discriminated against her based on her race; however, that matter is disputed by Black who testified that Pope gave no indication that the basis of her concerns with James was racially discriminatory treatment. (Doc. 24, Ex. 22 ¶ 3; Doc. 24, Ex. 15 at 167-69; Doc. 20, ¶ 8.) Black testified that Pope merely expressed disagreement with James's comments in her July evaluation – specifically that Pope disagreed with James's assessment of her audit procedure and her need to improve skills and attendance. (Doc. 24, Ex. 18 at 23-25.)

[6] Pope was required to provide weekly updates as to her status while on FMLA leave, as was her white co-worker Julie Hopper when Hopper took FMLA leave. (Doc. 24, Ex. 20 ¶ 11; Doc. 24, Ex. 19 at 30-31.) Pope's period of leave was thirteen weeks in duration, one week longer than the twelve week protection period provided by the FMLA. (Doc. 24; Ex. 20 ¶ 8.)

audits due to an increasingly heavy workload, and she had told audit team member Hopper[7] that she thought Adtran should create another Auditor position and place her in it. (Doc. 24, Ex. 19 at 26-27; Doc. 24, Ex. 15 at 157; Doc. 24, Ex. 17 at 50.) Upon learning of the addition of Hopper, Pope testified she was "relieved" that a second Auditor was added, and she did not object to Hopper or the new position. (Doc. 24, Ex. 15 at 203-04.)

     5.    **Pope's Continued Performance and Attendance Problems**

James conducted another bi-annual performance evaluation of Pope in January 2001, and told Pope that her performance had not improved. (Doc. 24, Ex. 21 ¶ 10; Ex. 8.) James stressed the need for Pope to improve in particular areas, but did not threaten to terminate Pope. (Doc. 24, Ex. 21 ¶ 10.) After the evaluation, on January 29, 2001, James verbally counseled Pope for an attendance problem in accordance with Adtran's attendance policy. (Doc. 24, Ex. 21 ¶ 10; Ex. 20 ¶ 10.) Out of her 19 scheduled work days since January 1, 2001, Pope incurred 10 unexcused absences[8] and she had fallen behind in completing audits. (Doc. 24, Ex. 15 at 226-27; Ex. 21 ¶ 10; Ex. 10.) James warned Pope that Adtran's attendance policy required issuance of a written warning for any additional unexcused absences or tardies during the next six months. (Doc. 24, Ex. 21 ¶ 10; Ex. 10.) Pope admitted during her deposition that the January 29 verbal counseling was the only disciplinary action James took against her. (Doc. 24, Ex. 15 at 225-27; Ex. 21 ¶ 10.)

---

[7] The Adtran audit team was comprised of Adtran employees who were not quality auditors but who occasionally assisted quality auditors in the performance of particular types of audits. (Doc. 24, Ex. 21 ¶ 5.)

[8] Pope had no FMLA leave remaining, as she had already used all leave to which she was entitled for the year. (Doc. 24, Ex. 20 ¶ 8.)

6.     **Pope's Resignation**

On January 31, 2001, Pope submitted a written resignation and left Adtran's premises. (Doc. 24, Ex. 15 at 216-17; Doc. 24, Ex. 9.) Pope's letter stated that her resignation was due to being upset over "bias treatment" and Larry Black's failure to follow up with her regarding their July 2000 meeting. (Doc. 24, Ex. 9.) Following Pope's resignation, Pete Ritch, Adtran Human Resources Director, repeatedly asked Pope to assist in his investigation into the allegations contained in her resignation letter, and he asked Pope to reconsider her resignation. (Doc. 24, Ex. 16 at 51-52; Ex. 15 at 231-35; Ex. 12; Ex. 13; Ex. 14.) Pope refused Ritch's requests. (Doc. 24, Ex. 15 at 231-35.) During Ritch's investigation James first learned of Pope's problems with her, and of Pope's complaint to Black about her in July of 2000. (Doc. 24, Ex. 17 at 46-48.)

B.     **Summary Judgment Standard of Review**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of

inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

C.   **Discussion**

   1.   **Title VII/Section 1981 Racially Disparate Treatment Claims**

Pope alleges that Adtran discriminated against her on the basis of her race in violation of Title VII and 42 U.S.C. § 1981. (Doc. 20 ¶¶ 20, 25.) When plaintiff offers no direct discriminatory evidence, she must use circumstantial evidence to prove her case. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981), the Supreme Court established the "basic allocation of burdens and order of presentation of proof" in disparate treatment actions alleging discriminatory treatment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252-53. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to judgment as a matter of law on the plaintiff's claim. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997).

      **a.**    **Pope did not establish a prima facie case of race discrimination because she did not put forth evidence that Adtran took adverse employment action against her**

To defeat summary judgment, Pope has the initial burden of proving a prima facie case of race discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Upon a plaintiff's failure to prove any element of her prima facie case, summary judgment for the defendant is appropriate. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1246 (11th Cir. 2001); *see Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118-19 (11th Cir. 1993). To establish a prima facie case of disparate treatment racial discrimination,[9] plaintiff must show that she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; (3) was treated less favorably than similarly situated employees outside the protected class; and (4) was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

    Adtran contends Pope has not established a prima facie case of disparate treatment racial discrimination in any term or condition of her employment because she did not establish that Adtran subjected her to any adverse employment action. The court agrees. An adverse employment action is an employment decision that alters an employee's compensation, terms, conditions, or privileges of employment, deprives her of employment opportunities, or otherwise adversely affects her status as an employee. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). To support an employee's Title VII claim, an employer must take action that impacts "the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. . . . [T]he asserted impact cannot be speculative and must at least have a tangible adverse

---

[9] The elements of Pope's § 1981 race discrimination claims and her Title VII race discrimination claims are identical. *See Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).

effect on the plaintiff's employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). This is an objective analysis -- the employment action at issue must be materially adverse as viewed by a reasonable person in the circumstances. *Davis,* 245 F.3d at 1239. Not everything that makes employees unhappy is actionable as an adverse employment action. *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001).

None of the acts of which Pope complains are adverse employment actions, as none resulted in a loss of pay, benefits or status, or otherwise impacted Pope's employment in a demonstrable way. Pope complains that Adtran: 1) required her to supply weekly status updates during her FMLA leave; 2) asked her on one occasion if she signed an Adtran sign-in log after hours; 3) failed to supply her with "newer" computer equipment than that used by Hopper; 4) required her to complete what she claims was an excessive number of audits; 5) criticized her audits; and 6) issued her a verbal warning for poor attendance. Even if Pope were able to establish that these events did in fact occur, none of these actions, collectively or individually, constitute an actionable adverse employment action sufficient to satisfy the third prong of a prima facie case.[10] *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001); *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587-88 (11th Cir. 2000); *see also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (alleged solicitation of negative performance memoranda, if proven, did not constitute adverse employment action that would support a retaliation claim).

Because plaintiff did not present evidence sufficient to prove Adtran subjected her to any adverse employment action, she did not establish a prima facie case of race discrimination under a disparate treatment theory.

---

[10] Pope's claim of disparate treatment in termination likewise fails because she resigned her employment and otherwise failed to establish that Adtran constructively discharged her, discussed *infra*.

b.      **Constructive Discharge**

The circumstances surrounding Pope's resignation do not create a working environment so intolerable that a reasonable person in her shoes would have felt compelled to resign. "To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. . . . [T]his court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'" *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991)(citations omitted). A plaintiff's subjective preferences and feelings about her employer's actions are not dispositive in assessing constructive discharge claims. *Graham*, 193 F.3d at 1284 (11th Cir. 1999); *Doe v. DeKalb County School District*, 145 F.3d 1441, 1450 (11th Cir. 1998). Rather, the standard is that of a "reasonable person," defined as one who does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).

Pope's description of her environment at Adtran is not one that would compel a reasonable person to resign. Pope claims that the following events forced her to resign: James's treatment of her, Black's failure to follow-up with her on her July 2000 complaint, her discovery that auditing papers were missing from her desk, and her feeling that others viewed her as "Ms. Stupid." (Doc. 24, Ex. 15 at 167-69; Ex. 9.) As for James's treatment of Pope, the record shows that, rather than disciplining Pope, James repeatedly tried to help her improve her performance. (Doc. 24, Ex. 21 ¶¶ 10, 11.) Pope also admitted James never communicated anything to her that implied her employment was in jeopardy, and the only counseling she received was a verbal counseling for unexcused absences. (Doc. 24, Ex. 15 at 225-27; Ex. 21 ¶ 10.) As for the name-calling, Pope testified that no one ever called her "Ms. Stupid" – she only felt people thought of

her as "Ms. Stupid." (Doc. 24, Ex. 15 at 219.) Similarly, Pope could not explain why some of her auditing papers were missing, yet she listed her suspicion of "foul play" as a reason for her resignation. (Doc. 24, Ex. 15 at 218-19.) As for Black's actions, Pope could not have expected prompt investigation and resolution of her complaint due to James's leave of absence and her own FMLA leave. (Doc. 24, Ex. 17 at 28, 57; Ex. 15 at 229.) Furthermore, the court finds that Black's failure to conduct a formal investigation into Pope's complaint about her evaluation would not compel a reasonable person to resign.

A reasonable person under the circumstances would not see resignation as the only means of relief. Based on the evidence, the court finds Pope's resignation was not a constructive discharge, and defendant's Motion for Summary Judgment is due to be granted on this claim.

2.   **Title VII/Section 1981 Retaliation Claim**

Because Pope offered no direct evidence to support her retaliation claim, she must establish her claim through circumstantial evidence by showing: "(1) she engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action." *Maniccia v. Brown*, 171 F.3d 1364, 1369; *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997). As with her disparate treatment claims, Pope failed to present evidence sufficient to conclude she suffered any actionable adverse employment action; therefore, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim.

3.   **FMLA Claims**

The FMLA creates two potential claims against employers – a claim for interference with FMLA rights and a retaliation claim. *O'Connor v. PCA Health Plans*, 200 F.3d 1349, 1352

(11th Cir. 2000)(*citing* 29 U.S.C. §§ 2615(a)(1), 2615(a)(2)). Under the FMLA, no employer may "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]" or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. §§ 2615(a)(1), 2615(a)(2). Pope alleges she was "denied full benefits and rights under the [FMLA]" ("interference" claim) and "defendant intentionally and wrongfully retaliated against" her ("retaliation claim"). (Doc. 20 ¶¶ 31, 37.)

    a.    **FMLA Interference Claim**

The FMLA does not restrict an employer's right to implement reasonable reporting requirements. 29 U.S.C. § 2614 (a)(5)("[n]othing in this subsection shall be construed to prohibit an employer from requiring an employee on [FMLA leave] to report periodically to the employer on the status and intention of the employee to return to work."); *see also Garcia v. Fulbright & Jaworski, L.L.P.,* 1996 WL 544371, at 7 (S.D.Tex. Aug. 15, 1996)(although plaintiff complained of receiving frequent calls and being required to call personnel during FMLA leave, the FMLA does not prohibit a periodic reporting requirement). "An employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. § 825.309(a). The court finds no evidence that Adtran's requirement that Pope report weekly interfered with her rights under the FMLA.

The FMLA provides that an employee's "FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12-month period." 29 C.F.R. § 825.200(a). The FMLA vests an employer with discretion to designate one of four 12-month periods to be used for purposes of determining FMLA eligibility. 29 C.F.R. § 825.200(b). One of the options available to employers is a rolling 12-month period measured backward from the date an employee first takes

leave under the FMLA. *Id.* In accordance with this regulation, Adtran's FMLA policy established a rolling 12-month option. Pope began FMLA leave in late July of 2000; she took twelve weeks of FMLA leave, which ended in October 2000. Therefore, Pope was not entitled to additional FMLA leave in January 2001. Accordingly, defendant's Motion for Summary Judgment is due to be granted on plaintiff's interference claim.

### b. FMLA Retaliation Claim

In the absence of direct evidence, the Eleventh Circuit utilizes the same framework when analyzing an FMLA retaliation claim as it does for a Title VII retaliation claim. *Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1283 (11th Cir. 1999). The basis of Pope's retaliation claim is that Adtran harassed her, verbally counseled her, and ultimately terminated her because she took FMLA leave. (Doc. 20 ¶ 37.) While Pope's exercise of her right to FMLA leave was clearly statutorily-protected activity, her prima facie case fails because she suffered no adverse employment action following the FMLA leave. Neither Adtran's weekly reporting requirement during her FMLA leave nor the verbal counseling for attendance by James qualify as adverse employment actions. *See, supra*, pp. 13-14. Furthermore, Pope resigned her employment, and the circumstances surrounding her resignation do not convert it to a constructive discharge. *See supra*, pp. 15-16. Defendant's Motion for Summary Judgment is due to be granted on plaintiff's FMLA retaliation claim.

### IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion to Strike is due to be granted in part and denied in part, and defendant's Motion for Summary Judgment is due to be granted, and plaintiff's claims dismissed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 22nd day of September, 2003.

                                                *Sharon Lovelace Blackburn*
                                                **SHARON LOVELACE BLACKBURN**
                                                United States District Judge